This case is number 23-13326, United States v. Antonio Brown. Mr. Burns. Good morning, Your Honors, and may it please the Court, I'm Thomas Burns and I represent Antonio Brown. On a textual basis, the physical restraint enhancement never should have been applied to Mr. Brown. It was based on egregiously wrong prior panel precedents, which this Court appeared on track to rehear in De Leon until after the Sentencing Commission publicly announced it would mend the 5-5 circuit split. Now Amendment 832 has become effective and the question is how it affects plain error review of the enhancement. This is a novel question. This Court has never addressed plain error arising from any retroactive guideline amendment, never mind one that mends a circuit split. And here the government is inviting the Court to do three things, as I understand their argument. First, they're asking you to hold that retroactivity can never establish plain error. Second, they're asking you to hold that if it can, retroactivity is decided at prong 2 of plain error review as opposed to prong 1. And third, to hold that Amendment 832 isn't retroactive in the first place. And we're asking you to decline these invitations. Mr. Brown Can we start with the last issue first? Mr. Burns Yes. About whether or not, putting aside error issues, whether or not the amendment is substantive and therefore not retroactive, we're clarifying and therefore retroactive. Mr. Brown Absolutely. And we, you know, we agree on the clarifying versus substantive dichotomy here that comes from a number of cases including Horn and Jerk Hour. So there's four factors here to consider, whether it alters the guideline versus the commentary, whether the Sentencing Commission describes it as clarifying or it alters punishment, whether the Sentencing Commission lists it in Section 1B110D as retroactive, and whether it overturns circuit precedent or clarifies a meaning that was inherent in the original guideline. As a factor one, this amendment basically moved text directly from the commentary into the guideline. So it is editing the guideline, but it's editing it with words that already existed. And then it's making a second change where it's changing the word physical restraint to this phrase that's a little bit longer, that if any person's freedom of movement was restricted through physical contact or confinement, instead of physical restraint. Mr. Burns Can I ask you this theoretical question? Does the substantive or clarifying nature of an amendment depend upon the state of circuit law before the amendment? I don't think so. I think it's either clarifying or substantive nationwide. One of the... Because if you follow what we've written and what other courts have done, I mean, in circuits that had hewed to the text more than our cases had, they're going to easily see 832 as a clarifying amendment. Oh, this is, they're telling us what we always knew, that it was required this sort of restraint. But in a circuit that went the other way, you may see the amendment differently. And that's the genesis for my question. Right. And I think the answer should be the same everywhere. And all circuits should hold that this is a clarifying amendment, not one that's making a substantive change. An opinion that you might find clarifying for you on the question is Judge Carnes' dissent in the United States against Summers. And there he's proposing what the test should be when the Senate's commission adopts a split-amending guidelines amendment. And he identifies exactly the problem that you've set here. It's like, well, isn't it a question of perspective? And he says, this is how it's going to play out every time in circuits where the home circuit precedent has been rejected, they'll say it's substantive or they'll have a tendency to do that. And in circuits where they didn't, they'll say it's clarifying. He proposes that the rule should be that there's a presumption that a split-amending guideline amendment is clarifying because it's clarifying what the rule should be and what it was from the beginning. I think he was wrong in that case and was in dissent instead of with the majorities. I don't think he, I disagree that, I think his test was actually met there because there the sentencing commission actually wrote, oh, this is a clarifying amendment. And then they jerked that draft back and said, actually, we're removing that from this document that we filed. And that was what the majority relied on to say, aha, this is what the sentencing commission's intent was to do a substantive amendment. So I think that's the test that you ought to adopt. It's not, it doesn't depend on what the home circuit precedent was, it's just if they're amending a split, the presumption that can be rebutted is that they are intending to do a clarifying amendment. So, and that's kind of- And is the reason for that, this makes sense to me, frankly, is the reason for that, because the Supreme Court often will effectively defer to the sentencing commission or to the rulemaking bodies if it's like a FRAP issue or an FRE issue or something. So those bodies are effectively sort of subbing in for the Supreme Court. And I don't think we would say typically when the Supreme Court resolves a circuit split that it's changing the law, it's just telling us what the law is for everybody. Is that sort of a rationale, essentially? I agree with that. And the Braxton rule is somebody files a lot of cert petitions that don't necessarily get granted for that reason. It's a frustrating part of practice. But yeah, they've basically said, like, you are the entity, sentencing commission, that's authorized to do that. And then in the rules context, it's the Supreme Court, actually, that is the one that sends the rules off to Congress. In both of those situations, both the sentencing commission and the rules, Congress has an opportunity to have a say because there's like a review period. It goes off to Congress and 60 days, legislative days, or 180 calendar days, they have an opportunity to weigh in. And so we end up in the same place, right, because the decision maker has said, like, this is what the amendment means, this amendment is clarifying what our original meaning was, and here you go. And there's sort of like an interesting distinction there between what this court does and what the sentencing commission does. You say what the guideline says, right, like you interpret the words, that's the textual analysis. But then the sentencing commission's role is to say, like, well, that's not what we  This is what we meant. So there's not really, how do you say, like a conflict necessarily between the two things that are being done because the court's role is to interpret text and the sentencing commission's role is to, like, express their meaning in better text. And that's what they did here as to factor one. Factor two, the sentencing commission's actually explained what they were trying to do. They said in their impact analysis, this is like a clarification. And so They didn't quite say that, did they? I mean, that would, that'd be a home run for you if they said this is kind of like a clarification. I didn't quote it directly. They say it clarifies, like, this area of the law. And so I think from that, you can read the tea leaves and say, like, they're intending to clarify what they originally meant. And that's consistent with So hold on. I just want to make sure I've got it straight. I thought they said something like that the point was to promote uniformity and consistency in guideline application. I didn't think they used the magic word clarification. We're looking at different parts. You're looking at So you're telling me at some point they actually used the magic word? So they do an impact analysis about whether the guidelines should be retroactive for all purposes under 1B.1.10. And they do a memo. So, like, the memo goes internally, like, this is our retroactivity impact analysis. And there they say, the quote is, clarify that the enhancement applies only when a person's freedom of movement was restricted through physical contact or confinement, such as being tied, bound, or locked up. So it's not a home run, but it's on base, right? They've struggled. So that factors in favor of us. Factor three, we think it shouldn't weigh heavily because the overall retroactivity analysis is not the same thing as whether it should be retroactive on direct appeal. There's, like, fact finding that might have to take place if you're to say, like, everybody gets the benefit of this. And that's why we're putting this specific amendment in 1B.1.10. So it's not listed in 1B.1.10, but it just doesn't weigh heavily. And that's what Horn, for example, held that. And then we already talked about factor four, about the significance of, you know, what home circuit precedent was. So we think that amendment 832 is retroactive. Then you've got the questions that I sort of started off with, which is, like, well, you know, does that make a difference ever? And is, where do we do this analysis? So let's assume for a second that it is, you can do this in the plain air context. Let's talk about whether it should be done in prong one or prong two. So I think it should be done at prong one, not prong two. And the reason is it's a functional analysis of plain error review. Like, why do we have this judge-made doctrine of plain error review in the first place? And there's a couple of reasons, but I kind of group them in three places. It puts the district on note. The district courts always are on notice of the binding precedent from the Supreme Court and the Eleventh Circuit. So this empowers the district court to jump in when the district court needs to. It discourages sandbagging by, you know, counsel in the district court, and it also facilitates appellate review by the creation of, like, a record where you can decide what was the right outcome. None of those things would apply to treating retroactivity as something that needs to be subject to plain error review. And the reason not to be CLIB is, you know, litigants lack clairvoyance and district courts don't have time machines. So it doesn't matter whether the retroactivity question is decided at the appellate level or at the district court level. It should just be part of the question, was there an error here? And to make that determination, you have to decide what the law is right now, and that's how we always do these questions when the law changes from when it was in the district court to in the appellate court. And it's also consistent with the judicial gloss that this court has said how plain error review works. It's not just because a case has said it that's binding, whether it's from the Eleventh Circuit or the Supreme Court. It can also arise directly from the text of a statute or a rule. And I don't really regard a rule as being any different from the guidelines because the Rules Enabling Act is very similar to the structure that the Sanderson Commission works under. So where does the plain error part of it work? It's when we're looking at the text of the amendment and saying, like, does the text of this amendment resolve the question about whether the enhancement was properly applied? And we see this clarifying amendment as answering that question directly. It would not have been... Your point is that you should treat, I think, that you should treat an amendment for plain error purposes the way you would treat a judicial decision.  Right. So at least on prong one, to determine whether or not there was error, you look at the law as it exists at the time of the new appellate decision. Right? And if the law has changed between the time of the trial and the time of the appeal, you may have error that wasn't error back then. Right. Right. But as long as it was a binding case, you would say it was plain error there. The wrinkle I'm trying, or the nuance I'm trying to draw out here is we're not relying on a decision to establish its plainness, we're relying on the text to establish its plainness. So, like, if the amendment wasn't as clear... But that runs into our prior precedent, because we interpreted that text differently. Of course. Wrongly, in your view, but we interpreted the text differently. Right. But our prior panel precedent also says we can treat the clarifying amendments as clarifying the original guidelines, so you should be looking at those two things together. And because the clarifying amendment, like, unpacks what was originally intended by the Defense Commission when it adopted the guideline, you look at both of them, and under the amended guideline, the text is, like, clear as a bell, like, this enhancement should not have been imposed on them. Tell me if this is the same thing you're saying or something slightly different. I guess, so, in prong two, if we had an intervening U.S. Supreme Court decision, good to go. Right? Intervening, binding 11th Circuit decision, good to go. So the wrinkle here is we don't really have one of those. What we do have is this clarifying amendment. So I guess what I thought you were going to say, instead of, well, you can also deduce it straight from the text, and maybe this is why I'm asking, is this the same thing you're saying or a different thing? I guess I thought you were going to say, again, by analogy to sort of, like, subbing in for the Supreme Court, when the Commission does a clarifying amendment, it's doing the intervening judicial decision thing, like, by proxy. Is that the same thing or is that, am I trying to, like, create a third category for U.S. Supreme Court 11th Circuit and U.S. Sentencing Commission when it does the clarifying thing? No. Or is that just really just text? I think you're understanding it correctly and that is the argument. I guess the question I'm trying to answer is, do you need a decision that has already held that this guideline is retroactive in order for the plain error test to be satisfied? I'm saying you don't because the error is established by you doing the retroactivity analysis and then the plainness of it is when you look at the text of the amendment. Because if the text of the amendment wasn't, like, exactly on point, you might still say, oh, well, yeah, but this, like, the text isn't quite clear enough and so we're still saying you didn't meet the plain error standard, but that's not true here because the text of the amendment is clear as a bell, like, this enhancement should not have been imposed on the defendant. And if it's a clarifying amendment, we must apply it, right? Isn't that what our law says? That is absolutely correct. The government is a little bit picking and choosing between which prior panel precedents to apply. They don't like Scroggins and its progeny, but you're bound by it. It's, you know, it's how we look at clarifying amendments from the sentencing commission. That rule has been applied multiple times in Jericho or Horn, like, just a bunch of other cases. So you're bound by that precedent and so long as you find the amendment to be clarifying, it should be applied even in the plain error context. All right. Thank you very much. You've saved your time for rebuttal, Mr. Burns. Cunningham. May it please the Court, Colette Cunningham for the United States. The 2025 amendment, 2B3.1B4B, does not create plain error here, where the explicit language of statute or rule does not specifically resolve an issue. There can be no plain error where there is no precedent from the Supreme Court or this court directly resolving it. Brown has not pointed to any Supreme Court or 11th Circuit precedent directly resolving the issue here in the way that he seeks, and the 2025 amendment does not fill that gap. A guidelines amendment is not like the Supreme Court telling us what a statute means, which necessarily is what the statute has always meant. In those situations, the statute is the same at sentencing as it is on the Supreme Court's review. Here, the language of the guideline changed after Brown's sentencing. So at most— But isn't that what a clarifying amendment is? It tells us what the guideline has always meant? Well, Your Honor, at most, it tells us what the Commission envisioned the prior guideline to be, but it's not necessarily what the guideline meant. And here, we are on plain error review. And so particularly with this guideline, even if the Commission originally envisioned that the prior text meant that the guideline would apply only when a victim's freedom of movement was restricted through physical contact or confinement, that was not obvious or clear under current law. And that's evident by half the circuits, including this one, holding that restricting a victim's movement sufficed. So regardless of how the amendment, this amendment, is categorized, whether substantive or clarifying, it can't create plain error. And as my colleague has— But you don't—I think you're right, but if it's clarifying, you don't need plain error, right? Well— You don't need the whole gamut of plain error review. Well, yeah, so the question is, if you just do the substantive or clarifying analysis, what part of that is imbued with a plain error analysis or not? Because that's normally a very different question than plain error is, right? You have a guideline. It was applied in the way that it was written at the time of sentencing. And then something changes between sentencing and the appeal. And the argument is, apply this amendment. It's clarifying. It's not substantive. Give me the benefit of it. That's usually not a plain error scenario, right? The clarifying substantive analysis is usually divorced from plain error review, right? Well, Your Honor, to the best that I've been able to determine, this Court has never applied the clarifying substantive analysis in the plain error context. All of the cases in which the Court found an amendment to be clarifying were on de novo review. So it is not something that's already out there in an opinion. But I think it makes sense that if you think about this, if it had been a statute, right, the Court's plain error case law does say that if the Supreme Court interprets a statute differently, tells us what it has already always meant, then we say, okay, District Court, you committed plain error. You didn't know it at the time, but that's how our doctrine works. So I don't think the analysis here should be any different, even if the Court were to find that this is clarifying, which we believe it is not. Of course, we can discuss that. But even if it found that it was clarifying, the Court still has to conduct a plain error analysis. Because in this case, the defendant did not contest the enhancement. And, therefore, the District Court didn't have an opportunity to consider whether it was correct or not. There was no analysis on that. And, of course, this Court had 30 years of binding precedent telling the Court to apply it the way it did. So the difference between, and it may be helpful to clarify, I do agree, as this Court has found previously, that a guideline can create plain error. So if the guideline is the same throughout the process, even without precedent, yes, that guideline can create plain error. But to have a guideline change from sentencing to an appeal, that is not the same thing as a Supreme Court case about a statute that didn't change. Right. And, again, under plain error, evaluating this particular statute, the Court, it would be hard for me to see how the Court could find clear or obvious error from a District Court applying binding precedent at the time based upon a subsequent guidelines amendment that at this point the Sentencing Commission has not deemed retroactive, which gets into the other part of the analysis. Yes, Your Honor. So assuming your view of the analytical chain is correct, do you think you do the substantive versus clarifying by itself and then do plain error? I don't think so, Your Honor. I don't think you even have to get there. I think you just... Oh, I'm sorry, Your Honor. I know your position in this case, I understand, because of the way things played out. But if you're doing the analysis, do you color the substantive versus clarifying analysis with any of the plain error stuff? Or you do that sort of on your own and then super build the plain error structure on your answer to whether it's clarifying or substantive? I think the latter, Your Honor, because this doctrine, at least as it exists presently in this Court's precedent, this clarifying substantive doctrine is focusing on these four particular factors that truly are separate from the plain error analysis. So I think kind of conceptually, it makes the most sense to walk through those factors and then kind of see where it lands because... So I suppose the Court has the option of how to go about this. If the Court were to find the amendment substantive, then it doesn't apply retroactively and then you don't have to do the plain error analysis. If you agree with our position, then you don't need to reach whether or not it's substantive or clarifying. So there's more than one way, I believe, to get to the result that we'd be requesting here. If I may, I'll be happy to address the four factors because I do believe there's a difference in opinion on those. Beginning with factor one, the amendment directly alters the text of the guideline as well as the commentary. And as we point out in our briefing, there is a new phrase inserted here that was not previously in this guideline or anywhere in the commentary. It added the phrase, that freedom of movement was restricted through physical contact or confinement. It also removed the term physically restrained. It added a phrase from 1B1.1 and then it didn't carry over part of that phrase from 1B1.1. It also changed the commentary and then two other guidelines were changed to reflect similar changes as we discussed in our brief. So this Court has held on more than one occasion that the alteration of actual guideline language strongly suggests that a substantive change was being made. And we have that here. In factor two... Can I ask you before you move to factor two? So I take your point that the new phrase is added at the beginning, bodily movement, but especially given the arc of the precedent, do you deny that the real change was bringing the commentary language into the body? I mean, you read De Leon and we told them to do this and they did it. I don't disagree, Your Honor, that that's what the Commission says it was doing. The Commission said it was making this change to address a circuit conflict. But there is a nuance here, which is that they have this new phrase and they added this term confinement Some of the prior cases maybe were focused more on whether you had to have physical contact, that sort of being bound idea. Adding in confinement here, this Court will determine as it goes what confinement means and how closely you have to be confined to meet this amendment. So again, the Commission had an express reason for doing this, which was to resolve the circuit conflict. But then they didn't use the same exact language. They created new language, which will be up to the courts then to determine what that language means and how to apply it. And it's hard to forecast how that's going to play out over time. So the second factor here, the amendment commentary does not refer to the amendment as clarifying. And I think that's important. So the document that my colleague is referencing is the retroactivity analysis that was prepared in May of 2025. And that's the Office of Research and Data within the General Counsel's Office of the Sentencing Commission telling the Sentencing Commission how many defendants would be affected by this change. Now when you look at the language, it's very close to what the amendment commentary language is, except the amendment commentary doesn't include the phrase to clarify. And I looked, I couldn't track that to see if they maybe got some earlier draft. But do you think, I mean in fairness, do you think, and this is, you know, reflects the colloquy that I was having with your opposing counsel, but don't you think the gist of the commentary is the same? You're right, it doesn't use the magic word, but it does say to promote uniformity and consistency in the outline application. Your Honor, I agree the gist is the same, but there is another important distinction which we flag in our supplemental brief, which is that this same amendment, this 2025 amendment, series of amendments, had two amendments to address circuit conflicts. That second amendment, the commission says in the amendment commentary that that's clarifying. And you can even tell by looking at the difference in the length and breadth and depth of what the commentary says about those two things, right? It says barely anything about the one that's clarifying. That was merely because the Third Circuit had determined based upon Supreme Court precedent that it couldn't follow the commentary and they were just kind of bringing the Third Circuit back into the fold. But this first amendment, there's lots of discussion and explanation. So, you know, is it as far along the line as every other substantive amendment? There's certainly things out there that are farther down this line, but it's not clarifying. There's just too much that happened here for it to be clarifying. The third point about whether or not the commission has designated it to be retroactive under 1B1.10, that's an important factor. My colleague talked a little bit about the sentencing commission and how the court sort of deferred to the commission to sort these things out. Well, that's the way for the sentencing commission to get nationwide equal application. If the commission designates it retroactive, then defendants all over the country get to file motions asking for sentence reduction. So that's the means to address that. And then fourth, the amendment abrogates circuit precedent, which is a significant factor. Does the extent of a circuit split matter at all in figuring out whether an amendment is clarifying       or substantive? Your Honor, looking at the case law, it's been all over the place. Sometimes, courts have found that because it's clarifying that because there's a circuit split, that means it's clarifying. The Ninth Circuit's case law says if it's a circuit split, it's therefore clarifying. Other circuits don't do that. Our circuit hasn't done that. This circuit has gone both ways. Although, it does seem more recently that the court is putting more emphasis on whether an amendment is overturning precedent. And there may be a difference between overturning a precedent that just, you know, existed as of a year and a precedent that existed for 30 years. So in Horn, where the court found the amendment to be substantive, that would have overturned 30 years of this court's precedent. Right here, if we were to find it to be, I'm sorry, and I said that in reverse, the court found it to be clarifying because it would have overturned. Part of the factor was that it would have overturned the precedent. And I'm sorry, Your Honor, I think I just mixed myself up. So you're right that if it was clarifying, it would have set aside precedent dealing with intended loss. Yes, exactly. Well, I was just going to say, you know, this is the Carnes point that your opposing counsel brought up. Somebody's ox is being gored and somebody's being pulled out of the ditch or whatever the analogy would be, right? So just to say that,  yes, it overturned our precedent, but it embraced a bunch of other precedents. Right. I agree, Your Honor. The thing here, though, is that this court's precedent on the substantive clarifying analysis includes as a prong whether or not it overturns this court's precedent. So if the whole thing was being scrapped to start over from a clean slate, everyone might look at this differently. But given where we are, the precedent part is part of the analysis is an important one that weighs in favor of refining its substantive here. All right. So can I ask you to go back maybe just to something you said at the very outset of your argument? Because in some ways, I think it's kind of like the nub of this whole plain error thing. You said, and I think, in fairness, it was in response to something I had said during your opposing counsel's argument. I said, you know, isn't the Sentencing Commission sort of subbing in for the Supreme Court in sort of the plain error analysis? And you said, and this is a good point, it's actually different because when the Supreme Court construes a statute, the statutory language hasn't changed. So the Supreme Court is telling us what that same statutory language has always meant. Frankly, I hadn't thought about that. I think it's a good point. But the way that the Sentencing Commission operates, right, is just a little bit different. It's not like an adjudicatory body. But the way, you know, given the substantive clarifying case law, the way that it tells us what, you know, sort of a string of words has always meant, is by doing the clarifying thing. And so, when it does the clarifying thing, isn't it really sort of serving the same role that the Supreme Court is doing in interpreting a statute or no? You just think it's completely different because the language changes at all. I think it's different, Your Honor. But it's different in, because the language     changes at all. And so, I think   I'm asking is because even at the plain error stage, like, I think we all agree that if there's an intervening Supreme Court decision, good to go. Intervening Eleventh Circuit decision, good to go. And what we         have here is an intervening, let's assume for purposes of the question, an intervening clarifying amendment by the Sentencing Commission. And in that circumstance, why wouldn't the intervening clarifying construction, whatever, amendment by the Sentencing Commission be the de facto equivalent of the Supreme Court or the Eleventh Circuit? That's all I mean. And, Your Honor, it is the Supreme Court  addressing this issue, but when the Court has looked at cases where there's been an amendment and found it to be clarifying, on de novo review, the Court has applied it. So, I understand Your Honor's point about a little bit of the tension here, but this is where the plain error analysis would be. Error that's plain, affects substantial rights, and, you know, harm to the reputation of the judiciary. So, the retroactivity             question I think should be decided under prong one, because the first thing you have to decide, is there an  and to decide is there an  what is the current state of the law? So, when you're asking Judge Jordan, where does it fit in, that's the place that this analysis fits in. Retroactivity is decided as a matter of law and not     So, I think that's    handle this, would be a presumption that it is clarifying unless there's         other indications that that's not what the  commission was doing. And here, I think, without the presumption, we still win, but with presumption, the win on the clarifying versus substantive change would be a little less taxing, and that test would do a lot of work for your analysis. Judge Newsom, you were asking about, well, both of us, isn't the  commission like the Supreme Court, and what's the difference here when the Supreme Court says this is what statute has always meant, and this is when the  commission says, well, this is what we always meant. That has to do with what I was talking about earlier with the difference between textual interpretation, where you're just trying to say not what they meant, but what they said, and then the  commission gets to react and say,  okay, you held that this is what we said, but this is what we meant, and so here are some new words that will convey our original meaning, and under your prior panel precedents about whether it's a  amendment versus a  amendment, you're to take that as a  amendment and apply it on direct appeal, and I don't see that there should be an exception for a plain error situation. We've got that prior precedent, prior panel precedent rule where we apply the law in effect at the time of the direct appeal, we've got prior panel precedent about how clarifying amendments work, and then we have the Braxton rule from the Supreme Court that this sentencing commission is charged in the first instance with fixing these circuit splits, and I just don't see how there's room for you to craft an exception to those concepts,  that are binding just because the case happens to be on plain error review. So we're asking you to vacate the sentence, or actually, sorry, I should invite any questions if you have further questions before I... No, I don't think so. We're good. Okay. Well, in that case, thank you both very much. Thank you. Okay. Come on up. We've got two residents.